Next case on the docket is Scrivner v. Board of Fire & Police Commissioners of the City of Mt. Vernon, Clause 5-12-0345. Parties ready? Alright, counsel, for the appellant, you may proceed. Good morning, your honors. May it please the court, my name is Thomas Duda. I represent the plaintiff in this case, counsel. To the extent I have unused, I know there's rebuttal reserved anyway, but if I have any unused time, I'd like to add it to that, although I probably wouldn't use it anyway. This is an administrative review of a decision of the Board of Fire & Police Commissioners. I don't want to mislead you. Use it up front or you lose it. You'll get five minutes of rebuttal. She's going to time you for the five minutes of rebuttal. But you don't have to use it all. We always tell people. When I teach moot court, that's the first thing I say to my students. Alright, go ahead, sir. Sorry. This is an administrative review of a decision of the Mt. Vernon Fire & Police Commission affirming the discharge of a 17-year fire lieutenant, Mr. Scrivner. This involves a violation of a residency rule, and it's our position that the two-fold test has not been met here. I'm going to get into the standard of review, but I'd like to just review some of the facts that I think establish that the decision ought to be reversed. In the two-step process, the first step of the process is whether or not the underlying charges were proved to the administrative agency involved. And in this case, Mr. Scrivner was born in Jefferson County, lived in Jefferson County his whole life. He was hired in Jefferson County, worked as a firefighter, was promoted to lieutenant for all of his life, with the exception of the 20-month period that is in dispute before the Board of Fire & Police Commissioners. He did the usual things that people did. After his divorce, he had significant financial difficulties and moved around within the bounds of Jefferson County. But matters came to a head for him in June of 2009. He did not have the resources to afford independent residency, and in fact, for a period of four months, firefighters lived 24-48 at the fire station, but he was living at the fire station on a rotating basis for a period of months. Was that within the 20-month period? During that 20-month period, yeah. No, before the 20-month period. In other words, his moving in with his parents was a consequence of his not finding a residence within Jefferson County. It was candidly a free place to live. But the whole 20 months was with his parents? It was. And this is a 42-year-old man, divorced man, three children, and the issue is whether this 20-month period of living with his parents in Hamilton County constituted a change of residence, which brings us to the standard of review on prong one of the two-prong test of discharge. The board wishes this court to apply, and the circuit court applied, a manifest weight of the evidence standard, which is the most deferential standard. I am contending that the standard to be applied is the clearly erroneous standard. I must say whether the standard this court adopts will change its opinion, I'm not completely clear, but I do think the clearly erroneous standard is the right one, because the question here is applying the facts of this case to the wording of the ordinance as to maintaining his residence as a condition of employment. And it's my position that the facts of this case reflect that Mr. Scrivener never had a desire to abandon a residence in Jefferson County and establish a new residence in some adjacent or other county. Exigent circumstances required that he, in fact, physically be located with his parents to have a place to live for free, it's a safe place to bring his children, and it was always his intention to leave his parents and resume an independent residence on his own. It sounds like you're talking more about domicile. Yeah. Well, actually, the ordinance itself talks about domicile and residency. In other words, the ordinance says any employee who shall fail to establish and or maintain his domicile and residency within Jefferson County shall be subject to discharge. So even if he had the intent not to change his domicile, if he changed his residency, would that be a problem? Well, I'm not sure that residency has the distinct legal definition that the court just suggested. The case that we keep fighting over, the Rahm Emanuel case, was really a case not about domicile. It was really a case about residency. For voting purposes. For voting purposes. But I don't think the cases that we cite in our brief establish that the rationale of that case, the cases relied on by the Supreme Court included non-voting cases, and there were non-voting cases that were cited by the court in reaching its opinion. The board tries to make light of this argument on the basis that they claim that we are trying to convert residents to a matter of mere intent. That's really not what is trying to be accomplished here. The point that's trying to be accomplished here is that Mr. Scrivner was in an emergency situation. It did drag on. But he never intended to permanently live with his parents and establish a new residence. And I think that is a factor. It's supported by the case law. And all of the facts that I know counsel is going to go over in his argument, such as, you know, where did he keep his clothes. I don't think he voted anywhere, whether Hamilton County or Jefferson County. The fact is that effectively Mr. Scrivner was homeless. I mean, he was living at the fire stations until he moved in with his parents. And, yes, he did not have a residence in Jefferson County. He didn't really have a residence in Hamilton County. He really had no place to live, which is why he was living with his parents. And I do think that that does present this court with a mixed question of law and fact. And, therefore, the manifest wit of the evidence is not the standard. It's the clearly erroneous standard. And I do think that a mistake has been made in this case, given his length of service as a firefighter, as a lieutenant with Mount Vernon. And those facts were given absolutely no weight whatsoever by the board. Was there a different standard of review for the decision to discharge? Yes. And that's abuse of discretion. Do you agree with that? No. Actually, I said that in my brief, and to some degree that's true. But the actual terms of art used in the second prong of the test are that the discipline imposed was either unreasonable, arbitrary and unreasonable, or unrelated to the service of the municipality. I said abuse of discretion, but that's really not the actual verbiage in the cases is what I just quoted. So it's our position that there hasn't been a proof of a violation of the underlying charge because there was not a change of residence on the part of this firefighter. What about the lack of cooperation with the investigation as well as the abuse of sick leave allegation? I do not believe that there was lack of – I don't agree that that was in the record. It is clear that on December the 1st, Mr. Scrivner, in fact, was given an order to produce proof of residency by 5 o'clock that night. He did, in fact, produce proof because he had a signed lease. He had a number of hours to sign the lease, but the premises it became evident were uninhabitable. And that's not clear from the briefs. It's phrased the way you just said, that it became evident. He did not know. He never moved in. How did it ever become evident? He didn't move in because of the mold problem. I know, but how did that get noticed or learned? That's not in the record. It's not in the transcript. So we don't know what time lag there was. Well, I don't think he talked about it to the department because by that time there was already an order that there was going to be a formal interrogation, and he already – people had already geared up. So the subject came up. But he truthfully answered what happened at the formal interrogation that took place on February the 24th. Right. So it was just within a matter of days that he signed the lease and then the lease for the property was uninhabitable. That's true. So one might consider at least the charges seem to indicate that he was obstructive in the process as well as his abuse of the sick leave allegation. If you set aside just residency and domicile for a moment, there are other allegations in the claim. Well, the abuse of sick leave is that he wasn't at a physical location on a day that he called in sick. Right. And they characterized it as abuse of sick leave. Right. He visited his children. That's true. What I'm saying is aren't there other charges here that were used as a basis for the board finding that he should be discharged? But these are all charges. All arise out of the emergency situation that had to do with his homelessness. All of the him calling in and the signing of the lease. The record is not clear as to when he discovered the mold problem in the Casey Avenue premises. The premises that the court is referring to is the lease premises that he signed the lease after the direct order. When he became aware of the mold problem is not in the transcript, and I'm hesitant to tell the court what the circumstances were. But the next time he met with the officials from the city was at the formal interrogation, and he was truthful in explaining to them, in fact, he had signed the lease. It's his testimony that he intended to sign the lease and move into the premises and only discovered later the problem and at the formal interrogation acknowledged. But the idea that a firefighter who was under formal investigation is scheduled for a formal interrogation under the Firefighters Disciplinary Act would independently visit with the chief, absent counsel for either side, I don't think that's a very realistic scenario. Does the record show that he left a Hamilton County telephone number with the fire department? Because they're on call, I think, like the 24th. Is there any evidence? And is that in the brief? It's in the record that he went and he received calls. The one thing he did do is that the formal address was a property adjacent to an address that he used to live in. But, in fact, the phone number was a phone number that he could be reached, and he was reached. That address was a vacant lot, wasn't it? It was. So he gave them a vacant lot and then a phone number. Was that a cell phone? I believe it was. And as long as we're on the subject before we move into the second prong of the test, his parents' premises, and I must admit I'm not sure that this thought process was going through the plaintiff's head when this was all coming down. My suspicion is that his thoughts were far more chaotic than this. But his parents' address is really four-tenths of a mile outside the county. So I don't want to argue to the court that a residency requirement can be satisfied by getting close but not going over the county line. But I am saying that the main reason for a residency requirement was not violated by the behavior of the plaintiff in this case because, in fact, his parents lived within four-tenths of a mile of the county border, and he did, in fact, go on all the calls. He must have not thought it was okay or he wouldn't have given them the address for a vacant lot. No, he didn't. He knew he was staying at his parents'. He did. And his point, I don't think he had any intention of staying there for 20 months. Or at the vacant lot. Right? That's no question. The second prong of the test is whether or not, even if the court finds that the circumstances were proven, whether or not they establish the right to discharge. Now, both parties cited a plethora of decisions. I attached the federal case to my brief because my understanding of the rules are if it's not a state case, we should attach it. The federal case is not of precedential value, but it does provide a nice summary of the divergence of opinion. And in the facts of this case, I believe that a remand for reconsideration of discipline is in order because, given his seniority, given his faithful service, given the fact that he, in fact, made calls, and given the reality that he was essentially a homeless person at the time that all of this came to a head, I think discipline is arbitrary and unreasonable. Well, the discharge is a pretty serious matter for living four-tenths of a mile across the county line. But what about the fact that the ordinance itself, I mean, there are ordinances that just say you must do this or you shall not do that or whatever. But this ordinance goes on and says you're subject to discharge if you do this. What difference? Does that make a difference? I do think it makes a difference, yeah. I mean, in other words, the ordinance itself says you have to live within the county, and if you don't, you're subject to discharge. I mean, it doesn't say you're subject to discipline, and it might be suspension or it might be something else. It says discharge. Okay, I don't agree with the court's analysis. I agree with the court that the word discharge appears in it, and it would alert you of the gravity that Mount Vernon takes this particular offense. But in all disciplinary language that I've read, both in union contracts and these types of ordinances, discharge, it doesn't have the words up to discharge, but when it says discharge, it includes lesser disciplinary enforcement. Then in the light of the facts of this case, it's the position of the plaintiff that the imposition of discharge was unreasonable and arbitrary under the circumstances of the case. All right, thank you, sir. Thank you, Your Honor. Counsel? Thank you, Your Honors. May I please report? My name is Tony Birgo. I'm the attorney for the Board of Fire and Police Commissioners, as well as the individual commissioners that have been named, the city and the fire chief who have all been named here. We believe this is, frankly, a very straightforward case. It calls for affirmance of the circuit court, which, of course, upheld the decision of the Board of Fire and Police Commissioners. You have to understand, going back to the process here, Mr. Scrivner was brought up on charges by the fire chief and discharged. His discharge wasn't affirmed by the Board of Fire and Police Commissioners. He had a full hearing, an evidentiary hearing, before the Board of Fire and Police Commissioners, and the board meeting as an agency made the decision to terminate him. It did that, affirming very well-established residency requirements that are very clear, very unequivocal in saying that a firefighter, as well as other employees, shall establish and maintain both domicile and residence, and that the implications for not doing so is termination. Indeed, it is a requirement of being an employee to maintain residency. And understand, it's a fairly flexible residency requirement as those go, because it's a countywide residency requirement. It's not even a city residency requirement. Mr. Scrivner plainly was fully well aware of this, and, indeed, that, of course, raises the entire question, well, if he wasn't aware of it, why did he lie about it? Why did he provide false addresses? Why did he provide a false lease at a place that he never resided in? Why did he not simply come clean to the chief very early on and say, Chief, I'm having a problem here. I have some financial issues. I seek permission for some flexibility here. You could look at this case through very different eyes had Mr. Scrivner done that, but that's not what was done here. And the precedent in this state is very clear and unequivocal in consistently upholding municipal residency requirements. I've yet to find a case where an individual did, in fact, not comply with a residency requirement, and the courts have reversed a discharge decision made by a board of fire and police commissioners or a civil service commission on that basis. I've yet to find a case in which a public safety officer, a police officer, a firefighter, has engaged in a series of dishonest or falsified acts, has engaged in real issues that create integrity problems, and the appellate courts in this state have not affirmed those sorts of decisions by board of fire and police commissioners, civil service commissions that say this is incompatible with public employment in this state. And a board of fire and police commissioners, which is in the first and best position to make that decision, decides that that individual must be terminated. If you toss out those rules, then the rules mean nothing, given a very clear, unequivocal, direct order, must reside in the city, and the chief gave him an opportunity to get into compliance here, notably, despite the fact of the fictitious address earlier. And if he still didn't do it and still didn't come clean with it, then frankly, it undermines all order in the ability of a city fire department or a police department to give direct orders, have those complied with, and expect employees to engage in appropriate acts with honesty, with integrity, and providing true information here. He wasn't discharged solely on the residency thing. I mean, the board decision says he basically found guilty of all charges. He was found guilty of all charges, and based on all charges, he was terminated on that basis. Frankly, these would all provide independent grounds that would support discharge. The residency issue consistently has been upheld by the courts as supporting a discharge. The honesty and integrity issues have consistently been upheld to support discharge. Drawing back on a couple things, I think it is important to clarify a couple facts. Listening to Mr. Duda's presentation here. First, it has to go back in 2009 he provided the false address for the vacant lot. He didn't go to the chief. He didn't ask for permission to move outside. Indeed, he gave a false address because he knew he was out of compliance, and rather than simply come clean and ask permission, this goes back to 2009. December 1, 2010, he was given a direct order to come into compliance, provide an address, as Mr. Duda indicated to Justice Case, provide an address within a couple days thereof, but that's the uninhabitable place that he never actually resided. Rather than coming clean then, as Mr. Duda would suggest, with chief, I signed this lease, but as I started to move in, the place was uninhabitable. He didn't come back to the chief in December. He didn't come back to the chief in January 2011. He didn't come back to the chief in early February and say, hey, I need to find another place. I can't reside there, and I haven't been residing there. Instead, it came to the city's attention that it did not appear that he was residing there. An investigation was then conducted, and that's when he was called into an interview. some 10, 11, 12 weeks after he had provided a second false address that he hadn't resided. So these are very serious sorts of issues here. Looking back at the standard of review, I'm not sure why there is a significant dispute on this issue. The precedent in the state's pretty clear and straightforward in discharge cases where the courts are reviewing those administrative action, agency actions. It's a two-step standard of review. I don't see a need for this court to start revising that credence. I'm in confusion here. The first is, does the manifest weight of the evidence support the factual findings underneath the record? Highly deferential standard, if there's any evidence in the record that supports it, if any rational prior fact could come to that conclusion, then those findings of fact are consistent with the manifest weight of the evidence. Highly deferential standard. And here, there's not really a lot of disputed facts. Mr. Scrivner does not dispute that he resided outside Jefferson County for some 20 months. He does not dispute that he provided false addresses to the city that he did not reside at. He does not dispute that contrary to the provision of the collective bargaining agreement regarding the use of sick leave, he did not stay home and use the sick leave for that purpose. He doesn't even claim that he was sick. He just used the day to go visit his kids. Well, that creates an issue, too. But there's no dispute as to those facts, those core issues. So the factual findings of the Board of Farm Police Commissioners seem to me to be fully supported by the manifest weight of the evidence. Clearly, nothing to undermine those with this relatively undisputed record. The second step of the inquiry is, do the findings provide a sufficient basis to find cause for discharge? Also a well-established step. Here, all we have to look at is a long-established set of precedent in which agencies, boards of farm police commissioners, civil service commissions, have routinely discharged individuals for violating residency requirements. Let me just stop you for a second. On the discharge decision, are you saying that abuse of discretion is not the standard for that? That's not the way that the courts have actually reported it. I believe it's really, it amounts to an abuse of discretion standard, because I think, I mean, fundamentally, the Board of Farm Police Commissioners and the city itself is entitled to, for example, issue its own rules, decide how those rules should be construed. For example, on the residency issue, trying to bootstrap the Rahm Emanuel case to this, different statutes, one's a state election statute, the other's a municipal ordinance. They're defined differently. They use different language. They have different implications. The city's entitled to issue an ordinance that defines residency how it wants. It could have defined residency as Mr. Duda would suggest. Well, if he kind of intended to be here and wanted to come back and erase it, they could have defined it that way. Instead, they actually made it very clear in what's actually a pretty unequivocal ordinance on domicile and residency established and maintained implication, as Justice Stewart acknowledged. You're going to be fired. We require you to live here in order to get the job. We require you to stay here in order to keep it. But the language that the courts use is a sufficient basis. I believe that when you look at the actual decisions, it becomes an abuse of discretion sort of standard. When you look through the consistent affirmation, certainly as to the residency cases and the dishonesty and integrity cases, where there has been a factual finding of a violation there and the boards or civil service commissions have decided to proceed with discharge, those have been routinely affirmed because it's simply a matter of, you know, it is the role fundamentally for these agencies to make this decision. The circuit court doesn't sit as some super personnel department. You certainly don't sit as some super, super personnel department above that. The purpose of the civil service commissions is to ensure that there is a full due process sort of hearing for these individuals and a determination made by that group and body first and foremost. You know, I think when we look at some of the other issues that have been presented here by the appellant, I think in trying to argue this clearly erroneous standard and asserting that it creates a mixed question of law and fact, I think it sort of misapprehends that actually the two-step inquiry kind of melds those two or takes care of those two things together. I think in order to make sure the precedent going forward doesn't become confused in this state, I think the court should continue to hold to the two-step inquiry relative to the factual findings on a manifest way to the evidence standard relative to the sufficient basis, look to what amounts to an abuse of discretion sort of standard. And I don't think it's appropriate to try and bootstrap this maximum Rahm Emanuel case to this case. You know, frankly, different ordinance, different statute, defined differently. But even if you were to try and import some of those standards, bootstrap them to this case, the facts are fundamentally different. It is acknowledged in the record. The record evidence makes clear that Mr. Scrivner did not maintain property in Jefferson County, didn't maintain possessions in Jefferson County, didn't vote, didn't pay taxes here. And most importantly, most fundamentally, his absence from the place of domicile, the place of residence that was required that we're referring to here, isn't a situation like Mr. Emanuel's where he was serving the president of the country or off in some elected office, for example, in Washington, D.C., otherwise, or serving in the military. The city of Mount Vernon has had employees serving in the military. We don't assume that, well, he's in Afghanistan, therefore he's not domiciled here anymore. Those are different situations, different facts, plainly distinguishable here. And finally, you know, when I look through the appellant's brief here, the reliance on simply the residency issue does, in fact, miss the fundamental big picture point that setting aside the residency issue, there's the whole integrity line falsification issues that provide independent justification for the discharge anyway. The fundamental, in balance, the issues become pretty straightforward. There's no dispute that he violated the rules. There's no dispute that he tried to lie about it. There's no dispute that he got a full and fair hearing before the Board of Fire and Police Commissioners, which he was allowed to present all of his evidence on that issue. The record in this case, bottom line, plainly supported the decision of the Board of Fire and Police Commissioners to discharge him, both factually as well as for clear violations of clear rules with clear consequences of doing so. The circuit court, I think, properly affirmed the decision of the board, and we believe this court should affirm the decision of the circuit court. Thank you, Your Honor. Thank you. May it please the court. The scenario that counsel described to the court, actually, from the plaintiff's point of view, I didn't argue it because I think that it would create asking this court to re-weigh the evidence, but according to the plaintiff, he, in fact, sought and did receive permission from the person he initially believed to be the chief, but it was his predecessor when the current chief was acting chief to temporarily live with his parents. I mean, that's in the record. I think it's either page 121 to 123 or 148, one of those three pages. Now, the chief testified that that didn't happen. The Board of Fire and Police Commissioners made no finding. I didn't argue it because, with a conflict of evidence, that gets me kind of violating my own rule of standard of review, but there really was evidence to that effect. Number two, I totally disagree that there are not similar cases where the courts have reversed on the basis of arbitrary and unreasonable discipline involving allegations of dishonesty or more severe events. In our brief and in our reply brief under Roman numeral two, we cited the Walsh case. I think Walsh was the fire, was the police chief. He illegally discharged weapons. In the Capple case, which is cited by the defendants, ultimately what the appellate court did after three appeals is they reversed an order compelling the board to reduce the discipline, but it did remand in order for the board to consider reduced discipline, and Capple was a fellow who was pled guilty to illegally selling firearms, which did involve inherent dishonesty. There's also the Kreiser case, the Kloss case. There are cases where there are severe allegations of criminal violations, of violent behavior on the part of the employee that the courts did reverse, so I disagree with the assessment of counsel. And finally, the idea that the plaintiff was misleading the chief in terms of signing the lease, I don't think the record supports that at all. He was ordered to get property. He went. He bought. He signed the lease. He had the intention of moving in. I do not believe, and not only is it reasonable, I don't believe it's possible when there's a formal interrogation scheduled for the employee unilaterally to approach the chief and say, you know, that property that I leased is uninhabitable. He did, in fact, at the interrogation, explain that to the city. So, again, I urge the court to review the record and to reverse and remand for reconsideration of a lesser discipline. Thank you for your time and attention. All right. Thank you both for your briefs and your arguments. We'll take this matter under advisement and issue a decision in due course.